McBRIDE, Judge.
The plaintiff insurance company which carried comprehensive coverage on the 19S4 Oldsmobile automobile of Milford Friedrich, Jr., paid to its said insured the sum of $586.94, which allegedly represents the amount of damages sustained by the automobile. Plaintiff took from Friedrich a conventional subrogation of all claims which he may have against any person on account of said damage to the vehicle. Plaintiff brought this suit as Friedrich’s subrogee seeking to recover the amount of its payment to him, alleging that the automobile was damaged while in defendant’s possession and that defendant’s negligence was responsible therefor. Judgment was rendered in favor of plaintiff as prayed for and defendant appeals.
Friedrich purchased the car when new from defendant who is engaged in the automobile business and who also operates a service department in connection therewith. On August 16, 1954, at which time the car had been driven but 1,000 miles, the interior of the vehicle was damaged as a result of water or some other liquid having been applied in an attempt by defendant’s *98 employees to clean the upholstery. Defendant answered the suit denying any and all liability and setting up several special defenses which need not be further alluded to. Nor is it necessary to discuss the exceptions filed by defendant.
We find the judgment to be clearly erroneous and it cannot be allowed to stand.
Friedrich had some negotiations with defendant with reference to the alleged damage, and it appears that defendant offered to install in the vehicle certain seat covers without charge which offer Friedrich accepted. Defendant did not carry these in stock and it was several weeks before their receipt from the manufacturer. In the interim Friedrich had a change of mind and refused to permit defendant to carry out the agreement to install the seat coverings in the car. Instead Friedrich contacted the Independent Appraisal Bureau and had that concern make a written estimate of the damage. Nothing in the record discloses the date on which the appraisal bureau examined the car, but there does appear in the transcript a certain estimate made by Independent Appraisal Bureau purportedly reflecting certain items of damage to the automobile in question together with the cost of parts and labor which aggregate the sum of $586.94. This estimate bears the date December 28, 1954, and thereon appears a notation that the speedometer of the automobile at the time showed it had been driven 10,686 miles. John D. Abadie, appraiser, made the estimate.
We do not know for whose account the Independent Appraisal Bureau acted in making the estimate of the damage, but, at any rate, Friedrich testified he received from the plaintiff a draft for the amount of the appraisal to cover his loss. However, a strange discrepancy exists which we believe should be mentioned in this connection. A photostatic copy of the subrogation and receipt Friedrich executed evidencing payment of the $586.94 by the insurer bears the date of August 16, 1954, which was on the day the alleged damage occurred.
Still another odd circumstance appears. Friedrich admits that after receiving the draft for $586.94 from his insurance company, he took the Oldsmobile to the establishment of Pontchartrain Motor Company and had the interior of the car repaired there. He insisted he did not remember the amount of the bill of Pontchartrain Motor Company for the work, but the record contains an invoice from that company reflecting that the job cost $79.26, which is dated February 19, 1955, and a notation appears that the mileage on the car as of that date was 12,461.
It might also be mentioned that neither the receipt and subrogation purportedly signed by Friedrich, the written estimate of Independent Appraisal Bureau, nor the bill of Pontchartrain Motor Company were ever offered in evidence.
There was no verbal argument before us as counsel submitted the matter on brief. In first considering the case we were of the opinion that perhaps Friedrich had not seen fit to have all the damage repaired and merely purchased seat covers from the Pontchartrain Motor Company in order to conceal the soiled and faded appearance of the seats rather than pay the expense of having the car re-upholstered. Of course, had he pursued this course he would have been perfectly within his legal rights.
However, Pontchartrain Motor Company repaired all damages to the automobile. Any doubt about this is dissipated by the testimony of Mrs. Friedrich who professed to know all about every important aspect of the case. She could or would not state the amount of the repair bill incurred with Pontchartrain Motor Company, but her testimony respecting the nature of the work runs thus:
“Q. Now, did Pontchartrain Motors repair the car? A. Yes, sir.
“Q. Did they repair it completely? A. To our satisfaction, they did.
“Q. And the Pontchartrain Motors completed their work and you accepted *99 the car, were there still some damaged items in the upholstery? A. No.
“Q. All of the damaged items in the upholstery had been repaired ? A. As far as my eyes could see. Maybe somebody else’s eyes could see something else but as far as my eyes could see, it was all done.”
By virtue of the subrogation Fried-rich executed, plaintiff stood in his shoes and would be entitled to recover from the tort-feasor for all damages suffered by the car, but the subrogee was bound to prove the amount thereof with legal certainty to the same extent as though Friedrich had brought the suit. The amount paid by the insurer under the policy provisions to its assured is not the criterion. The estimate relied on by plaintiff was presumably made by Abadie, but neither this person nor any other witness whose testimony might have shown the correctness of the estimate was produced, and the only semblance of proof touching on this vital factor of the case emanated from Mrs. Friedrich who, referring to the estimate, stated “all of the parts there were damaged.” Furthermore, there is not one word of evidence in the record going to show that the amounts listed for the cost of parts and labor are reasonable, correct, or were necessary.
Even if there had been proof that the appraisal of the damage was true and correct as of the date the adjuster examined the vehicle, his estimate could not have served as a basis for a judgment for the simple reason the estimate of Independent Appraisal Bureau was apparently made four and one-half months after the date on which the accident is said to have occurred and at a time when the car had been driven an additional 9,000 miles. It is a matter of common knowledge that cushions and upholstery in an automobile deteriorate rapidly and a few months of added age to a car might well make considerable difference in the appearance of its interior. A recovery is to be measured by the amount necessary to repair the automobile and place it in the same condition as it was, such amount to be reckoned as of the date of the accident or some reasonable time thereafter. Four and one-half months afterward is an unreasonable time. See Sunseri v. Fabre, La.App., 92 So.2d 407.
 For the reason above set forth, neither can the charges of Pontchartrain Motor Company for placing the car in a condition satisfactory to Friedrich be used as the basis for a judgment in plaintiff’s favor. The work was performed six months subsequent to the occurrence of the damage and after the vehicle had been driven almost 13,000 miles.
The instant case is almost identical with Royal Ins. Co., Limited v. Romain Motor Co., Inc., 10 La.App. 1, 120 So. 261, 262, which was a suit brought by an insurer-sub-rogee for damages, wherein we said:
“ * * * There is in the record no substantial proof of any damage to the motor, and the mere fact that an insurance company sees fit, in adjusting a loss with its assured, to agree with him on an arbitrary amount, not based on actual proof, does not render the party responsible for the loss liable for that amount, or, in fact, for any amount not actually proven. * * * ”
For the reasons above assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that plaintiff’s suit be dismissed at its cost in both courts.
Reversed.